# STATE OF MICHIGAN

# COURT OF APPEALS

In the Matter of E. A. C. BECKER, Minor.

UNPUBLISHED
May 14, 2015

No. 323834
Oakland Circuit Court
Family Division
LC No. 12-795470 - NA

Before: TALBOT, C.J., and CAVANAGH and METER, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to a minor child under MCL 712A.19b(3)(c)(*i*), (g), and (j). We affirm.

The trial court did not clearly err when it found that there was clear and convincing evidence to support the statutory grounds for termination. MCR 3.977(K); *In re Sours*, 459 Mich 624, 633; 593 NW2d 520 (1999). The child was removed from respondent days after birth in April 2012 because respondent did not know how to care for the infant, did not understand that the infant required a feeding schedule, and did not understand the infant's comprehension level as a newborn. The court authorized jurisdiction after a bench trial. After extensive individualized services and visitation, it was clear that, despite participating in services and trying her best, respondent had not progressed sufficiently to parent her child. See *In re Gazella*, 264 Mich App 668, 676; 692 NW2d 708 (2005), superseded in part on other grounds as stated in *In re Hansen*, 285 Mich App 158, 163; 774 NW2d 698 (2009), vacated on other grounds 468 Mich 1037 (2010). After eight months of sessions with a family educator, respondent was still questioning when to feed the child (to the point where the family educator was concerned about the issue) and was still, at times, not supervising the child appropriately. On the first day of the termination hearing, in January 2014, the family educator testified that her final opinion was that respondent was still not capable of providing adequate day-to-day care for the child. At the continued hearing in February 2014, a caseworker testified that respondent sometimes spoke with the child in a tone inappropriate for the child's age, and, when relatives came to visit, would let them take over the parenting. There was clear and convincing evidence that the conditions that led to the adjudication continued to exist and, given the lack of adequate progress despite ongoing services, the court did not clearly err in finding that the conditions would not likely be rectified within a reasonable time considering the child's age. See MCL 712A.19b(3)(c)(*i*).

In addition, respondent was involved in a violent, negative relationship with the child's father, had lived in a tent with him for a time during the proceedings, and had shown that she did

-1-

not make good choices concerning her involvement in this relationship. She demonstrated that she would lie to the police and the caseworkers to protect him in disregard for her own safety. In addition, she had attempted suicide. Respondent had demonstrated that her priority was not the child's protection and welfare. It was clear that respondent's cognitive limitations also impacted her parenting skills. Regardless of her intent, respondent had never been able to provide proper care or custody for the child and, considering all the evidence, there was no reasonable expectation that she would be able to do so within a reasonable time considering the child's age. See MCL 712A.19b(3)(g). The same facts showed a reasonable likelihood, based on both respondent's conduct and capacity, that the child would be harmed if she was returned to respondent's home. Therefore, the trial court did not clearly err in finding that there was clear and convincing evidence to support termination under MCL 712A.19b(3)(c)(j).

The trial court also did not clearly err when it determined that termination of respondent's parental rights was in the best interests of the child. MCL 712A.19b(5); *In re Trejo*, 462 Mich 341, 356-367; 612 NW2d 407 (2000). In deciding whether termination is in a child's best interests, the court may consider the parent's parenting ability, *In re Jones*, 286 Mich App 126, 129-130; 777 NW2d 728 (2009); the child's bond to the parent, *In re BZ*, 264 Mich App 286, 301; 690 NW2d 505 (2004); the child's safety and well-being, *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011); whether the parent can provide a permanent, safe, and stable home, *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012); and the child's "need for permanency, stability, and finality," see, generally, *In re Gillespie*, 197 Mich App 440, 446-447; 496 NW2d 309 (1992).

The court found that although respondent loved and was bonded to her child, it was difficult to determine how bonded the child was to respondent. The court noted that respondent had significant cognitive difficulties that impacted her parenting and that her judgment continued to be of "very great concern," particularly in terms of her relationship with the father. Concerning her poor decisions, the court referred to the fact that she lived in a tent because she did not want to be separated from the father and that she covered up for his inappropriate or illegal conduct. The court stated that respondent's lifestyle was chaotic and her capacity to maintain stability had deteriorated during this case. The court also noted that respondent's suicide attempt was "very concerning" and that her dependence on the father made it difficult for her to make independent decisions. Finally, the court noted that the child was in an appropriate foster-care placement where she was well-bonded with the foster family. The court's findings have support in the record.

Respondent had had extensive special services provided to her. She had put forth significant effort, but in light of her capabilities and lack of judgment, the court did not clearly err in finding that a preponderance of the evidence established that it was in the child's best interests to terminate respondent's parental rights. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013).

Affirmed.

/s/ Michael J. Talbot
/s/ Mark J. Cavanagh
/s/ Patrick M. Meter